This suit prays for the cancellation and surrender of a policy of insurance of complainant with a mortgagee clause in the possession of the defendant. It also seeks an injunction against the prosecution of separate actions at law, one by Ferro as assured, the other by defendant Duncan Building and Loan Association on the mortgagee clause.
On September 4th, 1927, Philip Mazzola, as broker for defendant Ferro, obtained from complainant's agent, Hutchinson, policy No. 10792 in the sum of $3,000, insuring the building known as 1174-1179 Boulevard, Bayonne, New Jersey.
Because of Ferro's failure to pay the premium, Mazzola arranged with complainant's agent, Hutchinson, for cancellation of the policy. Mazzola testified that since Ferro claimed he could not find the policy, he had him execute a lost policy receipt which is in evidence. This receipt reads as follows:
"This is to certify that Policy No. 10792 of Continental Insurance Co. issued at the Bayonne, N.J., agency of said Company to me has been mislaid or lost; that I do not consider it as in force or of any effect, and hereby agree not to make any claim on said Company under such Policy and agree to indemnify the Company against any claim that may be made; also to return the policy to them should it ever be found, and I hereby declare that the said policy has not been assigned or transferred; and I hereby acknowledge the receipt of ............. Nil. and/or dollars, in consideration of which I hereby surrender and relinquish all my right, title and interest in the said Policy and any and all advantages to be derived therefrom.
Signed this 21st day of November, 1927, at Bayonne, N.J.
In presence of Philippo Mazzolo
 CASIMIRO FERRO Assured No Mortgagee Mortgagee."
Ferro denied that this receipt bore his signature. On the basis of the testimony produced at the hearing, I concluded that his signature was genuine. This was apparent, not only from the testimony of a handwriting expert but from that of Mazzolo, who saw him affix his name. Ferro was, to say *Page 376 
the least, evasive and contradictory on the witness stand, and even attempted to deny genuine specimens of his signature on bonds and mortgages in evidence. Complainant is entitled to relief prayed for against Ferro. Two years after executing the above release, Ferro went to complainant's office and induced a bookkeeper therein to affix a mortgagee clause, making the loss payable to Duncan Building and Loan Association. He asserted that he still held complainant's policy, though I have found as a fact that he had signed a release. This representation was both material and false, and he is guilty of fraud.
The building and loan association contends that the endorsement in its favor created a new agreement between it and complainant. The case of Reed v. Firemen's Insurance Co., 81 N.J. Law 523, might apply but for the fact that the mortgagee in this case did not consent to the insurance for its benefit, and in fact rejected it when offered by Ferro. It is hardly necessary to enter into an exhaustive analysis of the testimony on this point. It is sufficient to say that Thomas J. Carrol, vice-president of the association, admitted that he was offered this policy and refused it on behalf of the association, stating that he, himself, was an insurance broker and would write a new policy. It is clear, therefore, that no contractual relations between the building and loan association and the complainant existed. It is a fact that Carrol did secure a new policy in place of the one of Ferro's which he rejected. The evidence also shows that the building and loan association held policies — exclusive of the Ferro one — which fully protected it.
The second point raised by the building and loan association is that complainant is estopped to deny the existence of the policy as to it. Here again it relies on Reed v. Firemen's InsuranceCo., supra. I think the distinction between that case and the one at bar is clearly stated in complainant's brief as follows:
(1) In the Reed Case no fraud was practiced in obtaining the mortgagee clause. The defense was based on a violation by the assured of a term of the principal policy. In the instant *Page 377 
case the mortgagee clause itself was obtained by fraud of defendant Ferro over two years after he had agreed to a cancellation of the policy, which he claimed was lost.
(2) In the Reed Case the mortgagee accepted the policy. In this case the mortgagee rejected complainant's policy when it was offered by Ferro with the fraudulently obtained mortgagee clause attached.
(3) In the Reed Case the mortgagee by accepting and retaining the policy definitely changed his position for, relying upon the protection of the mortgagee clause attached thereto, he did not seek or obtain other insurance to cover his interest.
In the present case the mortgagee, by rejecting complainant's policy, removed the very basis of any estoppel. The association in no sense changed its position in reliance upon complainant's policy. In fact, it then insisted upon and promptly obtained instead a three-year policy in the Aetna Insurance Company in the same amount as complainant's policy, so that it had $17,000 insurance. There is no evidence that it had requested or was entitled to a larger amount.
The third point is that complainant is liable to the defendant building and loan association although the policy was not in its possession. The answer to this, as I see it, is that a mortgagee cannot reject a policy and later claim benefits under it in the event of a loss.
The last point raised by the building and loan association is that of laches. I find, as a matter of fact, that complainant filed its bill as soon as it was aware of the suits at law already mentioned.
I will advise a decree directing the cancellation of the policy and mortgagee clause, and enjoining both defendants from proceeding further at law. *Page 378